IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LYDON MCCANN-MCCALPINE,

   Plaintiff,

v.

DIRECTOR GAIL WATTS, *et al.*,

   Defendants.

Civil Action No.:  PX-22-2195

**MEMORANDUM OPINION**

On August 31, 2022, Plaintiff Lydon McCann-McCalpine filed a civil Complaint pursuant to 42 U.S.C. § 1983, alleging that several named Defendants at Baltimore County Detention Center ("BCDC") failed to protect him from attack by another inmate. ECF No. 1. The Court screened the Complaint as required by 28 U.S.C. § 1915A and dismissed defendant Gail Watts[1], finding that McCann-McCalpine had failed to state a claim against her. ECF No. 3. The Court allowed the failure-to-protect claim to proceed as to Lieutenant McElligott; Sergeants Rose, Dupree, Okome, and Nance; and Officers Horton and Idowu. ECF No. 4.

Thereafter, McCann-McCalpine moved to amend the Complaint. ECF No. 7. Read liberally, the "Amended Complaint" really is a supplement to the original pleading. Accordingly, the Court will construe the proposed Amended Complaint as a supplement filed pursuant to Rule 15(d) of the Federal Rules of Civil Procedure and will deny the motion to amend as moot.

---

[1] McCann-McCalpine names Director Gail Watts as a Defendant in both his initial Complaint and his Supplement. ECF No. 1, 7-1. However, this Court has previously dismissed Watts from suit (ECF No. 3), and nothing in the Supplement to the Complaint alters that analysis. Watts remains dismissed from this action.

1

Because McCann-McCalpine proceeds in forma pauperis, the Court must review the supplemental allegations for sufficiency. 28 U.S.C. § 1915A. In so doing, the Court accepts the averred facts in the Complaint and supplement as true and most favorably to McCann-McCalpine.

I.   **Background**

A. **The Ross Incidents**

On July 22, 2022, detainee Kenneth Ross flooded McCann-McCalpine's cell with foul-smelling mop water. ECF No. 1 at 4. McCann-McCalpine informed Sergeant Rose about the incident but no officers took any action. *Id.* Later that night, Ross again approached McCann-McCalpine's cell, flooded it with mop water, and made "threats of violence." *Id.* This time, McCann-McCalpine informed Sergeant Dupree of the incident, but again, nothing was done. *Id.* at 5. The following day, McCann-McCalpine informed Sergeant Okome about Ross' threats and harassing behavior "but nothing still was done." *Id.* McCann-McCalpine also informed Sergeant Nance about his concerns. *Id.* at 7. "Still nothing was done by a total of 4 supervisors," despite McCann-McCalpine's repeated requests for help. *Id.*

On July 24, 2022, around 11:00 a.m., McCann-McCalpine was released from his cell to make a family call and take a shower. *Id.* McCann-McCalpine was housed on a protective custody tier, and thus "only one cell door should be open at a time." *Id.* Nonetheless, Officers Idowu and Horton distributed inmate lunches while McCann-McCalpine was showering, which required other cell doors to be opened. *Id.* at 8.

When Ross's cell door was opened, he ran toward the showers "with something in his hands[,] threatening to harm" McCann-McCalpine. *Id.* McCann-McCalpine avers that Officer Idowu did not attempt to restrain Ross, and as a result, Ross threw objects at McCann-McCalpine, struck him in the face and head, and bit him. *Id.* at 9. During the altercation, a responding officer,

Officer Carby (who may also be the "John Doe 2" named in the supplement), sprayed McCann-McCalpine with mace. Evidently, while McCann-McCalpine was "holding inmate Ross down by his hair so [Ross] wouldn't hit [McCann-McCalpine] in [his] face anymore," the officer deployed the mace, even though McCann-McCalpine showed "no resistance to arrest." ECF No. 7-1 at 8, 17. McCann-McCalpine managed to get away from Ross. At that point, an officer "dispersed a second can of mace," while McCann-McCalpine was "showing no resistance to arrest." *Id.*

During the attack, McCann-McCalpine injured his foot, right hand and elbow, and right knee. McCann-McCalpine was next transported to the medical unit for treatment. Nurse Levy-Still cleaned a cut on McCann-McCalpine's toe and medically cleared him. ECF No. 1. McCann-McCalpine avers that Levy-Still's care was constitutionally inadequate because she authorized his return to his housing unit even though he had "high blood pressure and an unclean bite wound." ECF No. 7-1 at 9.

While in the medical unit, Sergeant Nance approached McCann-McCalpine. ECF No. 71 at 9. McCann-McCalpine stated that "it's the staffs [sic] fault he was attacked," to which Lieutenant McElligott responded, "fuck it send him to lock up." *Id.* at 10. McCann-McCalpine alleges Lieutenant McElligott's decision was "retaliatory." ECF No. 7-1. Once McCann-McCalpine was in lock up, he noticed the bite wound, and was returned to medical so the wound could be cleaned. *Id.*

About two weeks later, McCann-McCalpine was transferred to the same tier where Ross was housed. McCann-McCalpine believes the transfer to be intentional so that Ross could inflict more harm on him in the future. ECF No. 7-1 at 13.

### B. Other unrelated incidents

The Complaint supplement also describes other incidents not related to the Ross allegations or the named Defendants. First, the supplement avers that on January 6, 2022, an unnamed officer who worked in the control room allowed gang members to roam to tier and specifically taunt McCann-McCalpine. ECF No. 7-1 at 5. It also describes an incident on August 6, 2022, during which McCann-McCalpine found "drugs" on his food tray. McCann-McCalpine complains that Officer Walo and Sergeant Carter took the tray to the kitchen to be examined instead of calling a drug sniffing dog to the tier and were otherwise involved in "planting" the drugs on McCann-McCalpine's tray. *Id*. at 11. McCann-McCalpine also finds fault with having been assigned a "bottom tier/bottom bunk due to [his] medical history," and not receiving "psych medication" in a timely manner on two occasions in October 2022. *Id.* at 14, 16. He lastly contends that BCDC "cancel[s] visits without giving a reason," and provides insufficient access to an administrative grievance process. *Id.* at 15.

### II. Analysis

The Court begins with the newly added incidents that bear no relation to the Ross claims. Claims and parties may be joined if at least "one claim to relief against each [defendant] arises out of the same transaction or occurrence and presents questions of law or fact common to all." *Ayele v. Washington Adventist Hosp.*, No. CV DKC 16-3778, 2017 WL 3868519, at *3 (D. Md. Sept. 5, 2017) (quoting 7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2009)). The new incidents bear no relations to the Ross allegations. Thus, the new allegations will not be joined with this action. The claims are dismissed, albeit without prejudice that so if McCann-McCalpine wishes to pursue them, he may file a separate complaint or complaints to assert the claims.

As to allegations stemming from the Ross incident, the supplement appears to add three: (1) an violation for alleged constitutionally inadequate care against Nurse Levy-Still; 2) retaliation stemming from Lieutenant McElligott's decision to place McCann-McCalpine in lock up because he had blamed the guards for allowing Ross to attack him; and 3) excessive force arising from correction officers spraying him with mace during the Ross incident. The Court considers each claim separately.

### A. Constitutionally Inadequate Medical Care

Pretrial detainees such as McCann-McCalpine enjoy the right to constitutionally adequate medical care while in detention. *Johnson v. Fields*, 616 F. App'x 599, 600 (4th Cir. 2015) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir.2001)). Individual state actors may be held liable for failing to provide such care when the actor failed to treat a detainee's serious medical need with deliberate indifference. *Johnson*, 616 F. App'x. at 600. Accordingly, the allegation must make plausible that the plaintiff's medical need is "apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

Viewing the facts most favorably to McCann-McCalpine, his "high blood pressure" and a "bite wound" do not alone constitute a serious medical need. Indeed, McCann-McCalpine did not even notice the bite wound until he returned to his cell. ECF No. 7-1 at 9. Nor do the pleadings suggest that his high blood pressure posed any medical threat to him at that time. Thus, the Complaint fails to make plausible that McCann-McCalpine suffered from a serious medical need. The claims as to Nurse Levy-Still are dismissed.

B.     **Retaliation**

Next, as to the retaliation claim against Lieutenant McElligott, the Complaint must make plausible either that "the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). In the prison context, McCann-McCalpine must make plausible that the alleged retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 & n. 4 (9th Cir.1985). The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id*. at 532. If plaintiff makes that showing, the burden shits to demonstrate that they would have reached the same decision even in the absence of plaintiff's constitutionally protected conduct. *Mt. Healthy*, 429 U.S. at 287.

The Complaint avers that McCann-McCalpine told McElligott that the officers had allowed Ross to attack him. McElligott allegedly responded by putting McCann-McCalpine in "lock-up." Although the Complaint provides little detail as to what constitutes "lock-up," one plausible inference is that it is restrictive if not punitive. The Complaint also avers that McCann-McCalpine was sent to lock up because he had complaint about officers having violated his right to be free from cruel and unusual punishment. The claim is sufficiently pled.

C.     **Excessive Force**

Similarly, as to the excessive force claim, the complaint now avers that McCann-McCalpine had been maced during the Ross incident for no apparent reason. At this stage, the Complaint must simply make plausible "that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396, *see also Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016). Objective reasonableness "turns on the 'facts and circumstances of each particular

case.'" *Id*. at 397, quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989). Because officer's macing of McCann-McCalpine is inextricably intertwined with the Ross incident, it is best allowed; especially because McCann-McCalpine specifically avers that he had not been resisting the officers' attempt to bring him under control. Accordingly, the Court will consider these additional allegations as part and parcel of the Ross incident.

The Court next turns to McCann-McCalpine's other motions.

### III.     Plaintiff's Motions

McCann-McCalpine asks the Court to appoint counsel for him because he possesses limited knowledge of the law and his confinement complicates his ability to prosecute the claims. ECF No. 8. A federal court retains the discretion to appoint counsel where an indigent claimant presents exceptional circumstances. 28 U.S.C. § 1915(a). *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). McCann-McCalpine has not presented such circumstances. If the case proceeds to discovery, McCalpine may renew his request for appointed counsel. The motion is denied without prejudice.

McCann-McCalpine also seeks entry of default against the defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.[2] ECF No. 9. Because the Complaint has been supplemented, the motion for entry of default is denied without prejudice. McCann-McCalpine filed the supplement 20 days after this Court issued its service order, and before Defendants' response was due. ECF Nos. 4, 7. Also, the Court had to screen the Supplement before the case could proceed. The motion is denied. A new service order shall issue.

---

[2] The declaration was incorrectly docketed as a motion for a default judgment, and the Clerk will be directed to correct the error.

## IV. Conclusion

Based on the forgoing, McCann-McCalpine's motion to amend (ECF No. 7) is denied as moot and the Proposed Amended Complaint (ECF No. 7-1) is accepted as a Supplement to his initial Complaint. The Clerk will be directed to update the docket to reflect that construction. Claims unrelated to the Ross incident are dismissed, as are claims against Nurse Levy-Still. The claims stemming from the Ross incident remain, along with the retaliation claim against McElligott, and the excessive force claim against Officer John Doe 2. The Clerk will update the docket to reflect that Officer John Doe 2 is a defendant.[3] Service as to all original and newly added defendants will be directed. McCann-McCalpine's motion to appoint counsel and for entry of default (ECF Nos. 8 & 9) are denied without prejudice.

A separate Order follows.

| | |
|---|---|
| 5/12/23 | /S/ |
| Date | Paula Xinis<br>United States District Judge |

---

[3] Defendants will be directed to assist with identifying Defendant John Doe 2 and must advise the court when they respond to service if he has been identified and if they are accepting service on his behalf. If they are unable to identify him given the facts put forth by McCann-McCalpine, they should so indicate.