IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LYDON MCCANN-MCCALPINE,

    Plaintiff,

    v.

LT. MCELLIGOTT ET AL.,

    Defendants.

Civil Action: BAH-22-2195

## MEMORANDUM OPINION

Plaintiff Lydon McCann-McCalpine ("McCann-McCalpine" or "Plaintiff") filed this civil rights complaint pursuant to 42 U.S.C. § 1983 when he was a pretrial inmate detained at the Baltimore County Detention Center ("BCDC"). ECF 1; ECF 7-1, at 4. McCann-McCalpine has since been released from custody. ECF 30, at 1. Plaintiff alleges that Defendants failed to protect him from an assault committed by another inmate, used excessive force against him, and then retaliated against him for complaining about the assault. ECF 1; ECF 7-1.

Pending is a motion for summary judgment filed by Defendants Lieutenant McElligott,[1] Sergeant Rose, Sergeant Dupree, Sergeant Okome, Sergeant Nance, Officer Horton, and Officer Idowu. ECF 51. Plaintiff opposes the motion. ECF 53 (response); ECF 88 (affidavit of McCann-McCalpine); ECF 89 (exhibits).[2] Defendants filed a reply. ECF 54. Also pending is McCann-McCalpine's motion for summary judgment against Defendant Nance, ECF 55, and a supplement to the motion, ECF 84. Nance opposes Plaintiff's motion. ECF 60. Multiple additional motions

---

[1] McElligott appears to have been promoted from Lieutenant to Captain since the filing of this suit. *See* ECF 51-3, at 35.

[2] The affidavit and exhibits are not noted to be in response to, or in support of, any particular motion. ECF 88. However, the Court construes these documents as a supplement to Plaintiff's response to Defendants' motion for summary judgment.

have been filed by Plaintiff. ECF 83 (motion for sanctions); ECF 85 (motion for expedited oral hearing); ECF 86 (motion for leave to file physical exhibit); ECF 90 (motion to consolidate cases); ECF 93 (motion to appoint counsel); ECF 94 (motion for injunctive relief). This opinion will address all pending motions as all have been adequately briefed and the Court finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons stated below, Defendants' motion for summary judgment will be denied in part and granted in part. Plaintiff's motion for summary judgment will be denied. Plaintiff's motion to file physical exhibit will be granted. The motion and exhibit will both be construed as a supplement to his pending motion for sanctions. Plaintiff's motion to consolidate cases will be denied. Plaintiff's motion to appoint counsel will be granted. Plaintiff's motion for injunctive relief will be denied. Plaintiff's motion for sanctions will be denied without prejudice to raise again as a motion for an appropriate curative instruction if the matter goes to trial. Plaintiff's motion to expedite a ruling on the pending motion for sanctions will be denied as moot.[3]

## I.    BACKGROUND

### A.    Procedural History

The Court previously summarized Plaintiff's allegations and procedural developments in prior orders. *See* ECFs 11, 59, and 81. While the Court assumes familiarity with these prior orders, it will highlight relevant facts and procedural history here. Plaintiff sued a number of individuals associated with BCDC alleging, among other accusations, that they failed to protect him from an assault on July 24, 2022, that occurred at the hands of another incarcerated person, Kenneth Ross, while both Plaintiff and Ross were housed at BCDC. *See* ECF 1, at 4–14; ECF 11, at 2–4 (outlining

---

[3] As Plaintiff was previously advised, ECF 81, at 1 n.1, the Court keeps track of all pending motions in this (and every) case before it and endeavors to resolve them all as quickly as possible.

factual allegations); ECF 81, at 2 (summarizing the earlier order at ECF 59). Plaintiff later filed a supplement to his complaint. *See* ECF 7-1. The Court subsequently dismissed defendants Gail Watts and Nurse Levy-Still from this action and narrowed Plaintiff's viable claims to those "stemming from the Ross incident [], along with the retaliation claim against McElligott, and the excessive force claim against" a then-unidentified officer. ECF 11, at 8; *see also* ECF 81, at 2 (citing to ECF 11, at 2–8).

After Defendants answered the complaint, *see* ECF 17, counsel was appointed for Plaintiff, ECFs 18 and 19. Subsequently, a scheduling order was entered. *See* ECF 21. The schedule was modified several times at the request of both parties. *See* ECFs 24, 26 (extending the date for completion of discovery until August 1, 2024). On June 21, 2024, counsel for Plaintiff sought to withdraw as counsel at Plaintiff's explicit request. ECF 30, at 1. On June 27, 2024, that request was granted. ECF 32; *see also* ECF 81, at 4 (summarizing the status of counsel and discovery). Plaintiff has been self-represented since that date.

On February 18, 2025, the Court issued an order, ECF 81, denying the following motions filed by Plaintiff: motion for a preliminary injunction, ECF 38; motion for an order directing the Clerk to issue a subpoena, ECF 46; motion for an interlocutory injunction, ECF 57, motion for sanctions, ECF 61; and numerous motions to "expedite" a ruling on pending motions, *see* ECFs 68, 70, 71, 75, 76, 78. However, the Court ordered Defendants to conduct an additional search for a video recording of the alleged flooding of Plaintiff's cell on July 22, 2022, by Ross, and, if no video was found, to provide an explanation as to why the video of the incident was not preserved. *See* ECF 81. The Court further stated that if no video is located or produced, the Court may consider curative jury instructions or sanctions, if appropriate. *Id.* at 10. Defendants filed a response, ECF 82, and Plaintiff subsequently filed a motion for sanctions, ECF 83.

**B.    McCann-McCalpine's Allegations**

McCann-McCalpine alleges that he was housed on a protective custody tier at BCDC during the summer of 2022. ECF 1, at 6. On July 22, 2022, he alleges that fellow detainee inmate Ross flooded McCann-McCalpine's cell with water from a mop bucket. *Id.* at 4. Plaintiff spoke with Sergeant Rose about the incident and reported that the water smelled of urine and also that he was being harassed by Ross. *Id.* Rose purportedly said that he would "take care of the situation," but McCann-McCalpine alleges that Rose took no action. *Id.*

Later that same evening, Ross again came out of his cell and again flooded Plaintiff's cell with mop water. *Id.* Ross also threatened violence against McCann-McCalpine. *Id.* McCann-McCalpine alleges that he spoke with the shift supervisor, Sergeant Dupree, about Ross harassing him and flooding his cell. *Id.* at 4–5. However, McCann-McCalpine claims that no disciplinary action was taken against Ross. *Id.* at 5.

On July 23, 2022, McCann-McCalpine alleges that he advised another corrections officer in the control room of his ongoing problems with Ross. *Id.* at 5. Plaintiff alleges that this officer stated that she was not aware of the issues with Ross, but pledged to have Sergeant Okome speak to McCann-McCalpine during Okome's "rounds." *Id.* Okome later spoke to Plaintiff about the harassment by Ross but, Plaintiff alleges, took no action. *Id.* Plaintiff also alleges that other inmates also acted against Plaintiff by "busting juice bags" into his cell, kicking his cell door, and covering up the outside glass window on his cell without his permission. *Id.* at 5–6. Plaintiff states that his problems with other inmates stemmed from a prior request to be moved out of his cell because he was housed with a violent inmate who repeatedly attempted to provoke him. *Id.* at 6. McCann-McCalpine alleges that other inmates believed him to be a "snitch and a rat" because he asked to speak to a Sergeant about on multiple occasions about harassment. *Id.* Plaintiff further

4

claims that while medication was being dispersed on July 23, 2022, other detainees threatened to assault him and pledged to "roll him out," which Plaintiff defines as "do[ing] anything to get [him] off the tier." *Id.*

On July 24, 2022, at approximately 8:00 a.m., Sergeant Nance was completing a "wellness walk," which Plaintiff alleges is a "routine walk done every morning by a S[ergeant] on [the] protective custody tiers." *Id.* When she arrived at Plaintiff's cell, Plaintiff notified her of the harassment "that had taken place all weekend." *Id.* at 6–7. Plaintiff alleges that Nance cut the conversation short and stated she could not "look into it" while she was standing at the cell door. *Id.* at 7. Plaintiff alleges that Nance failed to take any action to assist Plaintiff. *Id.* Later that morning, at around 11:00 a.m., Plaintiff alleges that he came out of his cell "for a walk," had a telephone call with his mother, and then headed to the shower. *Id.* While Plaintiff was in the shower, Officer Idowu came on to the tier to conduct meal distribution. *Id.* Although Plaintiff alleges that it was policy that only one cell door should be open at a time on the protective custody tier, Officer Horton, who was in the control room, began to open multiple cell doors to allow Idowu to distribute lunch to inmates. *Id.* at 7–8.

Plaintiff alleges that Ross came out of his now-open cell, "jump[ed] over the staircase railing," and "proceed[ed] towards the shower area where [McCann-McCalpine was] showering." *Id.* at 8. Plaintiff alleges that Ross "blitzed" him, threw an object at him, and then punched Plaintiff "in his face, side of face, and back of the head." *Id.* at 9. Plaintiff further alleges that he was bitten by Ross during the assault. *Id.* During Ross' attack, Plaintiff alleges that Office Carby[4] sprayed Plaintiff in the eyes and face with an irritant, either mace or pepper spray. *Id.* Plaintiff

---

[4] Plaintiff names Officer Carby in the narrative of his complaint, ECF 1, at 9, but does not name Carby as a defendant.

alleges that he held Ross down by his hair so Ross would not hit him in the face. ECF 7-1, at 8. Plaintiff then ran from Ross who was still pushing past an officer to get to him. *Id.* Plaintiff could barely see but put his hands directly on the table to show he was not a threat. *Id.* Plaintiff claims that Nance then dispersed a second can of mace on Plaintiff while Plaintiff was showing no resistance.[5] *Id.* Other correctional officers then came from the sallyport and handcuffed Plaintiff and Ross. ECF 1, at 9. Plaintiff was taken to the medical unit, was hyperventilating from being sprayed with mace, and had pain in his eye and face from the attack. *Id.*

McElligott allegedly reviewed the video footage of the incident and said that since Plaintiff was attacked, he would not be punished for being involved in an altercation. *Id.* Plaintiff alleges that he then pleaded to be uncuffed and told Sergeant Nance that it was the fault of staff that he was attacked. *Id.* Plaintiff alleges that McElligott retaliated against Plaintiff because Plaintiff made a statement that the officers were to blame for his assault, and directed that Plaintiff be sent to "lockup." *Id.* at 10. While Plaintiff was still in handcuffs, Nurse Levy cleaned a cut on Plaintiff's toe and "cleared" Plaintiff for lock up. *Id.* After Plaintiff was put in a cell and his handcuffs removed, he noticed the bite wound on his right forearm. *Id.* Plaintiff told Sergeant Kelly that he needed to return to medical to have the bite wound cleaned, that he wanted to press charges against Ross, and asked to have photos taken of his injuries. *Id.* He was taken to medical and the wound was cleaned. *Id.*

Plaintiff alleges that as a result of the fight with Ross, he had to undergo a strip frisk and claims that his property was taken when he was placed into lock up status. ECF 15, at 9. He alleges that was only taken off lock up after his family called BCDC on his behalf. *Id.* Plaintiff's

---

[5] Plaintiff has identified John Doe 2 as Defendant Nance. ECF 84, at 1 ¶ 4. As there are no other claims against John Doe 2, he will be dismissed as a defendant in this action.

injuries were "skin missing" from his right big toe, the top of his left and right feet, right hand, right elbow, and right knee. *Id.* Plaintiff also had "broken skin marks" from being bit on the right forearm, severe headaches, lightheadedness, dizziness, and was "more fearful of life" while in BCDC custody. *Id.* at 10–11. He also alleges that his mental health has suffered as a result of the attack. *Id.* at 11.

Subsequent to the filing of the instant lawsuit, the Court appointed counsel to represent Plaintiff. *See* ECF 19. Regrettably, that relationship broke down and Plaintiff requested that counsel no longer represent him. ECF 32, at 1. The Court later learned that the breakdown in the attorney/client relationship stemmed in part from the failure of Defendants to produce alleged video evidence of Plaintiff's assault. ECF 59, at 4. Plaintiff was provided with a copy of this video. *Id.* Since the discharge of appointed counsel, Plaintiff has proceeded pro se.

## II.    **PENDING MOTIONS**

### A.    **Preliminary Motions**

#### 1.    Motion for Leave to File Physical Exhibit

In support of the motion for sanctions and motion for expedited oral hearing on the sanctions question, Plaintiff filed a separate motion requesting to file a physical exhibit and then filed the exhibit itself. *See* ECF 86 (motion for leave to file physical exhibit); ECF 87 (notice of filing of physical exhibit). The physical exhibit is a flash drive containing a video that appears to be a discussion between Ross and a Baltimore County Police Officer or a corrections officer. *See* ECF 87. The officer describes what he saw on the video taken on July 24, 2022 related to the confrontation between Plaintiff and Ross. *Id.* Plaintiff contends that the video shows the officer "admitting to viewing electronic[ally] stored information of inmate [R]oss [j]umping railing that should [have] been preserved by Baltimore County Defendants." *Id.* Plaintiff's motion to file the

physical exhibit will be granted. The motion and the exhibit itself will both be construed as a supplement to his pending motion for sanctions, ECF 83. However, as will be explained below, that motion will be denied without prejudice to be raised at a time closer to trial, should a trial be scheduled in this matter.

### 2.    Motion to Consolidate Cases

Plaintiff has also filed a motion requesting to consolidate this case with *McCann-McCalpine v. Watts*, Civ. No. BAH-23-2039. ECF 90, at 1. Plaintiff states that the cases "share recurring issues [and] patterns linked to one another." *Id.* Federal Rule of Civil Procedure 42(a) authorizes the Court to consolidate cases that "involve a common question of law or fact." To meet the Rule 42(a) standard, cases typically must be "brought against the same defendant, rely[ ] on the same witnesses, alleg[e] the same misconduct, and answer[ ] with the same defenses." *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 981 n.2 (4th Cir. 1997). Since Plaintiff's cases fail to meet this standard, the motion to consolidate is denied.

As background, on August 31, 2022, Plaintiff filed his complaint in this action. ECF 1. Thereafter, he moved to amend the complaint. ECF 7. By order dated May 12, 2023, the Court construed Plaintiff's "Amended Complaint" as a supplement to the original pleading. ECF 11. The Court determined that the supplement included incidents not related to the Ross allegations or the named Defendants and dismissed those claims without prejudice. *Id.*; *see also* ECF 12 (implementing order). These unrelated claims centered on Plaintiff's allegations as follows: (1) that on January 6, 2022, an unnamed officer allowed gang members to roam the tier and taunt McCann-McCalpine; (2) that on August 6, 2022, McCann-McCalpine found "drugs" on his food tray and Officer Walo and Sergeant Carter took the tray to the kitchen to be examined instead of calling a drug sniffing dog to the tier and were otherwise involved in "planting" the drugs on

8

McCann-McCalpine's tray; (3) that Plaintiff was assigned a "bottom tier/bottom bunk due to [his] medical history;" that he had not received "psych medication" in a timely manner on two occasions in October 2022; (4) that BCDC "cancel[s] visits without giving a reason"; and (5) that BCDC provides insufficient access to an administrative grievance process. ECF 11, at 4. Plaintiff was advised that if he wished to pursue these unrelated claims, he may file a separate complaint (or complaints). *Id.*

On July 28, 2023, the Court received for filing the complaint in Plaintiff's second case, Civ. No. BAH-23-2039, suing Detective Fisher, Gail Watts, Sergeant Carter, food service provider Aramark, and other entities affiliated with the Baltimore County Police Department. *See* ECF 1 in Case No. BAH-23-2039. In that newer action, Plaintiff alleges general violations of the Eighth Amendment, makes allegations regarding the alleged August 6, 2022 incident where he claims drugs were hidden in his dinner tray, and raises additional claims including alleged interference with his right to a trial, allegations of his unlawful arrest, malicious prosecution, and a general civil conspiracy. *Id.* at 7–8. These allegations fail to meet the requirements for joinder of Rule 42(a) as they are not brought against the same defendants as in the case at bar. The allegations also rely on different witnesses, allege different misconduct, and likely will not generate a similar defense to the claims raised here. *See Harris*, 132 F.3d at 981 n.2. For these reasons, and those previously noted in ECF 11, the Court finds that the allegations presented in Plaintiff's second filed action are unrelated to the first action and Plaintiff's motion to consolidate actions is therefore denied.

### 3.    Motion for Injunctive Relief

Plaintiff also filed a motion for injunctive relief on behalf of himself and family members seeking an injunction against Baltimore County government officials and other Maryland government entities and agents. *See* ECF 94. Plaintiff alleges that actions taken by police during

a recent traffic stop, law enforcement presence near his residence, and actions allegedly taken by the Baltimore County Sheriff (or his deputies) have caused severe emotional distress, reputational harm, and ongoing fear for his safety and well-being. *Id.* at 2–3. Plaintiff seeks an injunction to prevent "ongoing, abuse, harassment, and irreparable harm." *Id.* at 1. Plaintiff requests a court order that these individuals be restrained from their conduct, that they cease surveillance of Plaintiff, including monitoring of, or interference with, Plaintiff's daily activities, that they refrain from attempts to intimidate Plaintiff's "witnesses or associates," and remove any records that were "generated or maintained as a result of the alleged conduct." *Id.* at 6.

Plaintiff has not provided any allegations in his motion that the named Defendants in this action, who are all employees at of BCDC, are in any way involved with the alleged actions that buttress his request for an injunction. Nor has Plaintiff alleged that the events that he complains of took place at BCDC where Defendants are employed. For example, Plaintiff includes in the motion a screenshot of the traffic stop which appears to have occurred on June 6, 2025. *Id.* at 3. He also notes that his federal litigation has caused a decline in his mental and physical health which has resulted in admission to the hospital on three separate occasions from June until August of 2025. *Id.* While the Court is obviously saddened to learn of Plaintiff's health issues, these complaints are unrelated to Defendants and the allegations against them and provide no basis for the requested relief. As such, Plaintiff's motion for injunctive relief is denied.

**B.    Motions For Summary Judgment**

1.    Defendants' Motion

Defendants McElligott, Rose, Dupree, Okome, Nance, Horton, and Idowu filed a motion seeking summary judgment in their favor. ECF 51 (motion); ECF 51-1 (memorandum in support of motion). Defendants argue that summary judgment should be granted because the record does

not contain sufficient evidence that: (1) Plaintiff was subject to excessive force when he was sprayed with mace; (2) Defendants failed to protect Plaintiff from harm from inmate Ross; or (3) Defendant McElligott retaliated against Plaintiff by placing him in lock up because he blamed the officers for allowing Ross to attack him. ECF 51-1, at 4.

In support of their motion, Defendants submit the following: Plaintiff's Objections and Responses to Defendants' First Set of Interrogatories, ECF 51-2; Defendant Dupree's Answers to Plaintiff's First Set of Interrogatories, ECF 51-3, at 1–11; Defendant Horton's Answers to Plaintiff's First Set of Interrogatories, *id.* at 12–21; Defendant Idowu's Answers to Plaintiff's Interrogatories, *id.* at 22–31; Defendant McElligott's Answers to Plaintiff's First Set of Interrogatories, *id.* at 32–41; Nance's Answers to Plaintiff's Interrogatories, *id.* at 42–51; Okome's Answers to Plaintiff's First Set of Interrogatories, *id.* at 52–61; and Defendant Rose's Answers to Plaintiff's First Set of Interrogatories, *id.* at 62–71. Defendants have provided no additional discovery with their motion and counsel affirms that no depositions were taken in connection with this case. ECF 51-1, at 2. Requests for Production appear to have been served and responded to, but Defendants have not filed with the Court any other documents or materials except those listed above.[6]

In response to Defendants' motion, Plaintiff filed an exhibit which appears to contain still shots taken from a video recording of the assault at the hands of Ross and its aftermath. ECF 53, at 3–8. These still shots have been interlineated with arrows, circles, and a factual narrative

---

[6] Notably, Defendants represent that in response to a discovery request, on July 9, 2024, they produced to Plaintiff a video recording of the "assault by Ross, and corrections officers responding to the attack and their response to that disturbance level." ECF 36, at 1. The video recording has not been provided by any party.

11

describing the actions taking place in each picture, as described by Plaintiff. *Id.* Defendants reply
with their own take on Plaintiff's visual evidence and accompanying narrative. ECF 54, at 3–4.

With deference to Plaintiff's pro se status, and in the absence of an objection by
Defendants, the Court will accept these filings. The first filing is a document titled "affidavit,"
and is signed "under the penalties of perjury" by Plaintiff. ECF 88, at 2. The exhibits appear to
be selected portions of documents in Plaintiff's possession. The first is part of an email from an
unidentified individual, Stephen Verch, to a person identified as Captain Giza dated February 28,
2022. ECF 89, at 1. The email references an "investigation" conducted by Lieutenant Amaefule
and notes that Plaintiff alleged, likely during the course of that investigation, that he was "beaten
by multiple gangs while incarcerated [at BCDC]." *Id.* The email appears to note that when
McCann-McCalpine was transferred to protective custody, the allegation related to gang assaults
was not included in the information provided to officers. *Id.* at 1. The second document is titled
"Supervisor's Comments Continued ..." and summarizes Plaintiff's allegation that on July 24,
2022, he was taking a shower when the housing unit officer opened another cell and allowed
inmates out for their walk. *Id.* at 2. The document further states that "Sergeant Bond has addressed
staff on several occasions and reminded them of the importance of assuring that they are walking
1 cell at a time and making sure that the inmates in 1 cell are locked in prior to opening any other
cell door."[7] *Id.*

---

[7] The Court also notes that Plaintiff previously filed exhibits relevant to the issue of Ross's cell
being opened while McCann-McCalpine was in the shower. *See* ECF 63 (memo in opposition to
affidavit of Dawn Copper); ECF 63-1 (opposition to Defendants' Exhibit B). These filings reflect
that Defendants Idowu and Horton received verbal counseling from their supervisor because each
officer "failed to ensure a Protective Custody inmate was secured in his cell prior to allowing
another inmate access to the dayroom, resulting in an altercation." ECF 63-1, at 5–6. Further, the
document reflects that officers allowed Ross out of his cell to receive a meal tray while McCann-
McCalpine was in the shower, and "[a]s inmate Ross was descending the stairs, he hopped the

2.    Plaintiff's Motion for Summary Judgment

Plaintiff filed a motion against Sergeant Nance seeking judgment in his favor on the excessive force claim, and then supplemented the motion. ECF 55; ECF 84. In support of his motion, Plaintiff filed what appear to be still shots taken from a videotape of the incident that he asserts depict that he was in handcuffs and not resisting when he was pepper sprayed by Nance. ECF 55, at 2. In his supplement to the motion, Plaintiff filed additional still shots of the incident that are in large part duplicative of those he filed in response to Defendants' motion for summary judgment. ECF 84, at 3–7; *see also* ECF 53, at 3–8.

Defendant Nance asserts that Plaintiff has failed to provide record evidence that he can prove the elements of his claim insofar as the photographs provided by Plaintiff in support of his motions are insufficient evidence that Nance used excessive force. ECF 60, at 2. Nance also raises the defense of qualified immunity, but largely on the ground that "Plaintiff cannot show the violation of a constitutional right." *Id.* at 3.[8]

---

railing and assaulted inmate McCann-McCalpine." *Id.* Neither Defendants nor Plaintiff submit these documents in relation to either Defendants' or Plaintiff's motions for summary judgment.

[8] Nance also mentions in passing that "Nance is unaware of any case law clearly establishing that, given these photographic facts, Defendants would have been on notice that their conduct would have violated Plaintiff's constitutional rights." ECF 60, at 3. This appears to be an attempt to raise qualified immunity, which protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Iko v. Shreve*, 535 F.3d 225, 237 (4th Cir. 2008). Nance appears to argue that qualified immunity is appropriate because the right allegedly violated was not "clearly established at the time" at the time of the alleged violation. Putting aside the fact that one sentence cannot substitute for the robust briefing needed to address the complicated question of qualified immunity, it was well established at the time of the incident in question that pepper spraying a handcuffed and subdued suspect who otherwise presented no threat to officers represents an unreasonable use of force. *Park v. Shiflett*, 250 F.3d 843, 853 (4th Cir. 2001). As such, qualified immunity does not apply.

## III.    LEGAL STANDARD

Defendants argue that summary judgment should be granted in their favor on all claims pursuant to Fed. R. Civ. P. 56. *See* ECF 51-1. Plaintiff counters that summary judgment should be granted in his favor against Defendant Nance for Nance's alleged use of excessive force. *See* ECF 55; ECF 84.

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 603 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431,

14

442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

The Court is also mindful that McCann-McCalpine is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990)). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## IV.    DISCUSSION

### A.    Failure to Protect Claim

Defendants assert that they are entitled to judgment in their favor on Plaintiff's Eighth Amendment failure to protect claim because Plaintiff cannot present evidence sufficient to prove the claim at trial. ECF 51-1, at 5. The Court disagrees.

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia*,

15

428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It also "embodies" the "concepts of dignity, civilized standards, humanity, and decency." *Id.* (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "That protection imposes on prison officials an affirmative 'obligation to take reasonable measures to guarantee the safety of . . . inmates.'" *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)). Stated differently, "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Importantly, Plaintiff was a pretrial detainee at the time of this incident. The protections afforded convicted prisoners under the Eighth Amendment extend to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983)). To state a claim for failure to protect from attack by another detainee, a pretrial detainee first must establish that the defendant officer exposed the detainee "to an objectively 'substantial risk of serious harm.'" *Younger v. Crowder*, 79 F.4th 373, 382 (4th Cir. 2023) (quoting *Farmer*, 511 U.S. at 834). Second, the plaintiff pretrial detainee must show the defendant officer's "deliberate indifference to a serious risk of harm on the purely objective basis that the 'governmental action' [that the plaintiff challenges] is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 611 (4th

16

Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)), *cert. denied*, 144 S. Ct. 2631 (2024).

After *Short*, "[p]retrial detainees can state a claim under the Fourteenth Amendment, based on a purely objective standard, for prison officials' deliberate indifference to excessive risks of harm." *Short*, 87 F.4th at 604–05. "Now, it is sufficient that the plaintiff show that the defendant's action or inaction was . . . 'objectively unreasonable[.]'. . . [T]hat is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly. . . . [I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Short*, 87 F.4th at 611 (citations omitted).

Defendants acknowledge that as pertains to Defendant Dupree, there is a factual dispute as to whether Plaintiff informed him that Ross had threatened and harassed Plaintiff and flooded Plaintiff's cell with dirty water because Dupree does not recall the incident. ECF 51-1, at 6; ECF 51-3 at 4. The factual dispute, however, goes beyond Dupree, as Plaintiff alleges that he also reported the threats, harassment, and flooding to Defendants Okome, Rose, and Nance. ECF 1, at 4–7; ECF 88, at 1 ¶ 4 (affirming that "[f]rom 7/22/22 [un]til 7/24/22[,] I told Sergeant Rose, Sergeant Dupree, Sergeant Okome, [and] Sergeant Nance [that] inmate Ross kept threatening to kill me and cause bodily harm"); *id.* ¶ 5 ("I also informed all sergeants inmate Ross was flooding my cell with dirty urine water from the mop bucket while I was locked in the cell."). Okome states that he worked on July 23, 2022, but does "not recall encountering Plaintiff." ECF 51-3, at 55. Rose recalls "encountering Plaintiff on 7/22/22 when he complained about the dirty mop bucket water" and recalls that Rose "simply supplied him with a new bucket of clean water." *Id.* at 64. Nance states that Plaintiff did inform her that something had been "thrown under [Plaintiff's] door"

and "continually" asked her "when [she] would look into this incident," to which she responded, "I cannot look into this while I am standing here." *Id.* at 47. There is nothing in the record to indicate that Dupree, Rose, Okome, or Nance took action in response to Plaintiff's alleged reporting of safety concerns related to Ross.

Plaintiff also alleges that only one cell door should be open at a time on the protective custody tier, and that while he was in the shower, Officer Horton began to open cell doors so that Idowu could distribute lunch to inmates. ECF 1, at 7–8; *see also* ECF 63-1, at 5–6 (documenting that Defendants Idowu and Horton received verbal counseling from their supervisor in relation to the July 24, 2022 incident because each officer "failed to ensure a Protective Custody inmate was secured in his cell prior to allowing another inmate access to the dayroom, resulting in an altercation"). McElligott stated in her answers to interrogatories that cell doors in protective custody "are opened one at a time, or in tier concept which allows half the unit to be out at the same time." ECF 51-3, at 40. Rose states in his answers to interrogatories that "[c]ell doors are supposed to be closed at all times" and notes that "measures" have been taken to "fix the doors.". *Id.* at 69. Rose further states that all protective custody inmates "will all come out and mingle together" and are not "segregated all the time," however he further noted that "the protective custody inmates were on '23 and 1'" at the time of the alleged assault, meaning "one cell opened at a time." *Id.*

Relevant to Plaintiff's allegations, Horton recounts Plaintiff's assault as follows:

I was observing Officer Idowu conduct meal distribution. I opened cell 14 door as Officer Idowu was holding the food tray giving me the hand signal to open the door. Inmate Kenneth Ross jumped over the railing and proceeded to walk towards the shower where inmate McCann-McCalpine was taking a shower. Inmate McCann-McCalpine stepped out of the shower and struck inmate Ross with a closed fist.

18

ECF 51-3, at 15. Idowu states that he "was not aware that the Plaintiff was in the shower" and that Plaintiff "only came out from the shower after [Ross'] cell was opened." *Id.* at 25. Idowu also alleges that Plaintiff "struck . . . Ross first." *Id.*

Plaintiff states in his answers to interrogatories that he suffered "permanent injuries" as a result of Ross' assault and the response by officers, including "lacerations to his left and right big toes, lacerations to his right elbow; lacerations to his right knee; lacerations and puncture wounds to his right forearm; head injuries, including a concussion; nerve damage in his face and right forearm; ongoing pain in his back, neck, and joints; skin burns from prolonged exposure to pepper spray; memory loss; panic attacks; and emotional distress." ECF 51-2, at 10–11.

The record before the Court presents numerous factual disputes relevant to key issues of liability that are best left to a factfinder. For example, accepting Plaintiff's facts as true, a reasonable factfinder could determine that Defendants should have known about the risk that Ross posed to Plaintiff—indeed, Plaintiff claims they *did* know—and that Defendants were objectively unreasonable in ignoring Plaintiff's complaints about Ross. Defendants knew that Plaintiff's cell had been flooded, and if Plaintiff is to be believed, Defendants were aware that Ross was "threatening to kill [Plaintiff] and cause [Plaintiff] bodily harm." ECF 88, at 1 ¶ 5. Thus, there is a clear dispute over whether Defendants were aware, or should have been aware, of the risk of harm posed to McCann-McCalpine by Ross and disregarded that risk. *See Hammock v. Andoh*, Civ. No. DLB-21-796, 2025 WL 2402198, at *5 (D. Md. Aug. 19, 2025) (denying summary judgment when a plaintiff detainee alleged that he was assaulted after he warned corrections officers that he "feared for his life" and asked to "move to another cell"). Further, there is a dispute of material fact over whether allowing Ross to leave his cell while McCann-McCalpine was showering presented an "objectively 'substantial risk of serious harm'" to McCann-

McCalpine, *Younger*, 79 F.4th at 382, and whether Defendants' actions or inactions in doing so were "objectively unreasonable, . . . that is," whether Defendants "should have known of that condition and that risk, and acted accordingly," *Short*, 87 F.4th at 611 (quoting *Kingsley*, 576 U.S. at 397). In sum, the record presents key disputes of material facts as to Plaintiff's failure to protect claim. "[S]ummary judgment is not intended to be a substitute for a trial of the facts." *Anderson*, 477 U.S. at 249. As such, Defendants' motion for summary judgment is denied.[9]

### B. Excessive Force Claim

Both Plaintiff and Defendants have filed motions for summary judgment pertaining to the claim that Nance used excessive force when she maced (or pepper sprayed) Plaintiff when he was in handcuffs following the Ross incident.[10] ECF 51-1, at 4–5 (Defendants' motion); ECF 55, at 1

---

[9] Defendants attempt to raise qualified immunity as a defense to Plaintiff's failure to protect claim but do so only in a short paragraph at the close of their reply brief. ECF 54, at 5–6. As noted, qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Iko*, 535 F.3d at 237. "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citations omitted). "Moreover, where—as here—defendants raise an issue such as qualified immunity only in a reply brief, a district court is entitled to refuse to consider it at that stage of the proceedings." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006). The Court has already found disputes of material fact related to the violation of the constitutional right at issue. As to whether the right was clearly established at the time of the incident, Defendants offer only one sentence, stating that they "are unaware of any case law clearly establishing that, given these photographic facts, Defendants would have been on notice that their conduct would have violated Plaintiff's constitutional rights." ECF 54, at 6. Given the paucity of Defendants' analysis on this point, the Court sees no reason to upset the traditional rule regarding arguments raised for the first time in reply.

[10] Plaintiff's initial complaint (and supplement) alleged that Officer Carby, not Nance, sprayed irritant in Plaintiff's face. ECF 1, at 9; ECF 7-1, at 8. Nance does not raise this apparent incongruity in her motion for summary judgment or in her opposition to Plaintiff's motion for summary judgment. Instead, Nance argues that there is no evidence in the record establishing that any officer used mace or pepper spray during the July 24, 2022 encounter with Plaintiff. ECF 51-1, at 5; ECF 60, at 3. Since the parties proceed as though Nance is the person alleged to have sprayed Plaintiff, the Court will follow suit.

(Plaintiff's motion). Defendants assert that there is no evidence in the record of excessive force at the hands of Nance, whether it be through the use of "mace or pepper spray or otherwise." ECF 51-1, at 5.

Plaintiff's claim is properly considered under the Fourteenth Amendment's Due Process Clause. *See Kingsley*, 576 U.S. at 397 ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989))). To state a claim of excessive force in violation of his Fourteenth Amendment rights as a pretrial detainee, Plaintiff may prevail upon evidence that "the use of force is deliberate—*i.e.*, purposeful or knowing." *Kingsley*, 576 U.S. at 395. Plaintiff need not detail his alleged assailant's *subjective* state of mind, "a pretrial detainee must show only that the force purposely or knowingly used against him was *objectively* unreasonable." *Id.* at 396–97 (emphasis added). Objective reasonableness turns on the "facts and circumstances of each particular case." *Id.* at 397 (quoting *Graham*, 490 U.S. at 396 (1989)). To determine if the force used was reasonable, the following factors may be considered: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Plaintiff submits an annotated still photograph as part of his response to Nance's motion reflecting Plaintiff was already handcuffed and not resisting efforts to subdue him when Nance dispersed an irritant that Plaintiff believes is pepper spray. ECF 53, at 7. Plaintiff affirms as much in his affidavit. ECF 88, at 2 ("Sergeant Nance retaliated against me when I told her I was attacked and it was [their] fault and sprayed me with pepper spray while I was handcuffed showing no

21

resist[ance]."). Plaintiff further alleges in his complaint that he was taken to the medical unit and

was hyperventilating from being sprayed with an irritant, and had "pain in [his] eye and face from

the attack." ECF 1, at 9. Plaintiff also affirmed that he suffers from "skin burns from prolonged

exposure to pepper spray." ECF 51-2, at 11.

 Defendants assert that no Defendant mentioned the use of pepper spray or mace in response

to Plaintiff's interrogatory asking each to "[d]escribe [their] version of the incident in the

Complaint." *Id.* What Defendants overlook, however, is that Nance states that she "did not use

any physical force against Plaintiff, and Plaintiff did not use any physical force against [her]."

ECF 51-3, at 46. However, in response the question of "whether [she] observed or [is] aware of

any injuries sustained by Plaintiff as a result of the incident," Nance responded, "I am only aware

of oleoresin capsicum exposure (mace)." *Id.* Nance's response supports Plaintiff's allegation that

he was exposed to mace or pepper spray at the hands of Nance. It is, of course, unresolved if it

was Nance who used mace on Plaintiff, and if so, whether the use of mace was an excessive use

of force. However, "[s]ummary judgment cannot be granted merely because the court believes

that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of

the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R.

Miller et al., Federal Practice & Procedure § 2728 (3d ed. 1998)). Moreover, while Defendants,

and Nance in particular, argue that the still shots submitted by Plaintiff are "not evidence," ECF

60, at 2, no party challenges the authenticity of the images. While it may be true that the images

do not actually depict what Plaintiff says they do, this is a debate over facts and is best reserved

for the finder of facts.[11]  Thus, there remains a triable issue of fact on Plaintiff's claim alleging

excessive force such that neither party is entitled to summary judgment.

### C.    First Amendment Retaliation Claim

Plaintiff alleges retaliation in violation of the First Amendment on the ground that he was

disciplined for speaking to officers about the Ross incident. ECF 1, at 10; ECF 7-1, at 17.  Plaintiff

alleges that McElligott reviewed the video footage of the incident and initially said that Plaintiff

would not be punished for what occurred. ECF 1, at 9.  Then, after he pleaded to be uncuffed and

blamed BCDC staff for allowing Ross to attack him, Plaintiff alleges that McElligott ordered that

he be sent to "lockup." *Id.* at 10.  Defendants respond that the only evidence in the record reflects

that McCann-McCalpine was sent to "lockup" because he struck Ross during the July 24, 2022

altercation. ECF 51-1, at 8 (citing deposition transcripts of McElligott, Idowu, and Horton).

To state a claim of retaliation for exercising a First Amendment right, a plaintiff must allege

that: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some

action that adversely affected the First Amendment rights; and (3) there was a causal relationship

between the protected activity and the defendant's conduct. *See Shaw v. Foreman*, 59 F. 4th 121,

130 (4th Cir. 2023); *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017); *Constantine v Rectors &*

---

[11] The Court is mindful that the images provided are taken from a video that "would likely bear profound consequences on the claims in this dispute, depending on its depictions." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023).  However, that video is within Defendants' control. Indeed, Defendants failed to acknowledge the existence of the video until the very end of discovery, which was the subject of an earlier dispute in this litigation.  *See* ECF 59, at 6 ("However, the Court notes that Defendants repeatedly asserted throughout discovery that no videos of the Ross incidents existed when, in fact, they apparently did.").  Defendants devote a portion of their reply brief to describing the images and encouraging the Court to accept their explanation for what is depicted in each. ECF 54, at 3–5.  For whatever reason, no party chose to share the video with the Court.  As such, the Court is disinclined to accept Defendants' invitation to disregard Plaintiff's interpretation of the photos in favor of Defendants', particularly when Defendants could have provided the actual video that would have settled any dispute over what the pictures actually show.

*Visitors of George Mason Univ.*, 411 F.3d 479, 499 (4th Cir. 2005). In assessing a First Amendment claim of retaliation, the question, "from an objective standpoint," is "whether the challenged conduct would 'likely deter a person of ordinary firmness from the exercise of First Amendment rights.'" *Snoeyenbos v. Curtis*, 60 F.4th 723, 731 (4th Cir. 2023) (quoting *Constantine*, 411 F.3d at 500). Thus, "the challenged conduct" must "generate more than a de minimis inconvenience." *Id.* at 730. Moreover, the Fourth Circuit has stated: "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Martin v. Duffy*, 977 F. 3d 294, 304 (4th Cir. 2020) (cleaned up) (citation omitted).

In support of McElligott's argument for summary judgment on the retaliation claim, McElligott, Horton, Idowu, and Nance each state that Plaintiff was placed in lock up due to a physical altercation with Ross. *See* ECF 51-3, at 18 (Horton stating that an inmate may be sent to lock up for fighting); *id.* at 28 (Idowu stating that Plaintiff struck Ross with a closed fist); *id.* at 35–36 (McElligott stating that she reviewed the video footage and saw Plaintiff throw a close fist punch, striking the other individual first, so he was issued an incident report); *id.* at 48 (Nance stating that Plaintiff was placed in lock-up per policy because he was involved in a physical altercation with Ross).

McElligott also asserts that Plaintiff failed to respond to the motion with any evidence to support his claim. ECF 51-1, at 7–8. McElligott also references Plaintiff's own interrogatory response when he was asked to identify anyone with personal knowledge of the facts alleged in the pleadings. *Id.* at 4, 7. There, Plaintiff's response only addresses those individuals with "knowledge regarding various acts of harassment and intimidation against Plaintiff by inmate Kenneth Ross between on or about July 22, 2022 and on or about July 25, 2022, including, but not

limited to, the July 24, 2022 assault by inmate Ross against Plaintiff." *Id.* at 4, 8. No information is provided concerning Plaintiff's First Amendment retaliation claim. *Id.* Further, in Plaintiff's response to McElligott's motion for summary judgment on this issue, he does not address this claim at all, let alone point to any evidence in the record to counter McElligott's arguments. *See* ECF 53.

Federal Rule of Civil Procedure 56(c) places the burden on the party responding to a motion for summary judgment to show that a fact is genuinely disputed by "citing to particular parts of materials in the record . . . ; or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). Plaintiff has failed to cite to any part of the record to support his assertions or dispute McElligott's statement of facts. "This failure to respond, however, does not fulfill the burdens imposed on moving parties by Rule 56." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993); *see also Palmer v. W. Virginia Div. of Corr. & Rehab.*, No. 23-7120, 2024 WL 4449419, at *1 (4th Cir. Oct. 9, 2024) ("A non-moving party's failure to respond to a summary judgment motion—or a specific argument therein—does not relieve a district court of its duty to consider if the moving party is entitled to judgment as a matter of law."). Regardless, a review of the record reflects that McElligott is entitled to judgment as a matter of law on this claim.

There is no dispute that Plaintiff was involved in an altercation with Ross as Plaintiff provides visual evidence confirming this fact. The record also includes the unrefuted assertion by numerous correctional officer defendants that detainees must be sent to "lock up due to fighting," ECF 51-3, at 17, 27, 48, and that the decision to send Plaintiff to lock-up was made by "[t]he zone supervisor and the shift supervisor," *id.* at 29, because Plaintiff was involved in the Ross incident,

25

*id.* at 18, 27.  Thus, even assuming Plaintiff engaged in First Amendment conduct and the decision to send him to lock-up adversely affected his First Amendment rights, the record before the Court fails to generate a dispute of material fact as to a causal connection between the two because there was a legitimate reason for the alleged retaliatory action.  *See Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Against the numerous statements indicating that some form of segregated housing assignment was required due to Plaintiff's involvement in an altercation, the Court finds only a short portion of Plaintiff's affidavit arguably suggesting otherwise.  Specifically, Plaintiff's asserts that the decision to send him to lock-up was made because "Lt. McElligott was mad" that Plaintiff told her it was BCDC officials' "fault" that Plaintiff was assaulted by Ross.  ECF 88, at 21.  It is true that "[a]n action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate."  *Martin*, 977 F.3d at 304 (citation omitted) (brackets in *Martin*).  However, Plaintiff does not raise this—or any—argument in opposition to McElligott's evidence supporting the argument that sending a detainee to segregated housing after an altercation is non-discretionary.  The Court will not invent an alternative argument that Plaintiff himself does not assert, particularly because "[c]laims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."  *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).  Summary judgment is granted in Defendants' favor on Plaintiff's First Amendment retaliation claim.

## D.    Appointment of Counsel

As discussed, the Court previously appointed counsel for Plaintiff, ECFs 18 and 19, and on June 21, 2024, counsel sought to withdraw as counsel after Plaintiff explicitly asked him to,

ECF 32. On June 27, 2024, the request was granted, ECF 32, and Plaintiff has proceeded self-represented since that date.

On August 7, 2025, Plaintiff filed a motion to appoint counsel citing his declining physical and mental health. ECF 93. Plaintiff states that he has multiple medical issues, including cognitive impairment and difficulty with concentration and that he has frequent medical appointments and hospitalization. *Id.* at 2.

As discussed herein, Plaintiff's claims of excessive force and failure to protect will go forward. "[D]istrict courts have discretion to appoint counsel in civil cases and abuse that discretion by declining to do so where the case of an indigent person presents exceptional circumstances." *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (citation and quotations omitted). Exceptional circumstances exist if (1) plaintiff has a "colorable claim" and (2) considering the claim's objective complexity and his subjective abilities, plaintiff "lacks the capacity to present it." *Id.* (citation and quotations omitted). The Court considers Plaintiff's medical issues, the complexity of the case, and the case status. The Court also notes it has had considerable difficulty procedurally managing Plaintiff's multiple and ongoing filings which it attributes to Plaintiff's limited legal knowledge and perhaps to some of the medical issues that he raises. Accordingly, the Court determines that Plaintiff has demonstrated exceptional circumstances warranting appointment of counsel under § 1915(e)(1) and the Court will again seek to appoint counsel for Plaintiff.

In making this decision the Court is mindful that in filings related to other motions in this case, Plaintiff attached text messages between Plaintiff and his former counsel in which Plaintiff made unwarranted accusations of his prior counsel and generally took a disrespectful, if not aggressive, tone. *See* ECF 35-2, at 6. The Court is also aware, however, that Plaintiff was at the

27

time understandably frustrated with the pace of the litigation and with Defendants' repeated assertions that a video of the Ross incident did not exist when, in fact, it apparently did. *See* ECF 81, at 6. As such, the Court is willing to reappoint counsel with the understanding that Plaintiff will treat new counsel with respect and will permit counsel to perform their duties without unwarranted interference.

### E.    Motions for Sanctions

Plaintiff's motion for sanctions pertaining to destruction of videotape leading up to and including the July 24, 2022 incident, ECF 83, is denied without prejudice to raise appropriate instructions if the matter proceeds to trial.[12] To impose sanctions, there must be a finding of prejudice to the party seeking sanctions, and even then, the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Further, the Court may impose the sanctions outlined in Rule 37(e)(2) "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). The record before the Court fails to establish this requisite intent and arguably fails to allege prejudice as there appears to be no dispute that Ross previously flooded Plaintiff's cell, thus diminishing the need for the video to establish this fact. Regardless, the Court will wait to address whether an appropriate jury instruction or other resolution is appropriate to address Plaintiff's issue. The Court will welcome the additional input of Plaintiff's counsel on this issue as well and thus denies the motion without prejudice to raise it closer in time to any trial on the remaining claims. The motion to expedite an oral hearing on the motion for sanctions, ECF 85, will be denied as moot.

---

[12] The Court previously ordered Defendants to look for any video of Ross flooding Plaintiff's cell. ECF 81, at 9–10. Defendants responded by noting that no video of the cell-flooding event was preserved because the identity of the alleged wrongdoer (Ross) was known and the incident did not involve a "serious allegation," such as an "allegation[] of excessive force or serious staff misconduct." ECF 82-1, at 1–2.

28

## V.    **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment, ECF 51, is granted in part and denied in part. Plaintiff's motion for summary judgment, ECF 55, is denied. Plaintiff's motion to for sanctions, ECF 83, is denied, and the motion to expedite a ruling that motion is denied as moot, ECF 85. Plaintiff's motion for leave to file a physical exhibit, ECF 86, is granted and is treated as a supplement to the motion for sanctions. Plaintiff's motions to consolidate cases, ECF 90, and for an injunction, ECF 94, are denied. Plaintiff's motion for appointment of counsel, ECF 93, is granted.

A separate Order follows.


DATED: <u>September 23, 2025</u>                         <u>          /s/          </u>
                                                          Brendan A. Hurson
                                                          United States District Judge